**A&O SHEARMAN**

> By **June 7, 2024**, the Defendant shall file a supplemental letter setting forth Pretrial Services' position.
>
> By **June 13, 2024**, the Government shall file a response to the instant application.
>
> SO ORDERED.
>
> *Jennifer H. Rearden*
>
> Jennifer H. Rearden, U.S.D.J.
> Date: June 5, 2024

VIA ECF

Hon. Jennifer H. Rearden
United States District Court
Southern District of New York
500 Pearl Street, Room 1010
New York, NY 10007

**Allen Overy Shearman Sterling US LLP**
1221 Avenue of the Americas
New York, NY 10020

| | |
|---|---|
| Tel | +1 212 610 6300 |
| Fax | +1 212 610 6399 |
| Direct line | +1 212 610 6369 |
| | eugene.ingoglia@aoshearman.com |

June 5, 2024

**Re: *United States v. Pablo Hernandez-Rodriguez*, 23-cr-00509-JHR-2**

Dear Judge Rearden,

We write on behalf of Defendant Pablo Hernandez-Rodriguez ("Mr. Hernandez") pursuant to 18 U.S.C. § 3145(c) and Rule 6(B) of Your Honor's Individual Rules and Practices in Criminal Cases to request a conference to appeal the determination by the Magistrate Judge on September 8, 2023 to reject bail for Mr. Hernandez. *See* ECF No. 5; ECF No. 25, Tr. of Proceedings as to Pablo Hernandez-Rodriguez ("Hr'g Tr.").

Mr. Hernandez was charged with a drug conspiracy under 21 U.S.C. § 841(b)(1)(A). *See* ECF No. 15. Mr. Hernandez has not been charged with any violent acts and has no history of violence. Hr'g Tr. 14:2-6. Mr. Hernandez is a ten-year resident of the United States with long-standing ties with the United States, including a family of five children and a long-term partner (all U.S. citizens), all of whom reside here in the United States. *See* Hr'g Tr. 10:18-22. We respectfully submit that the newly proposed combination of conditions of release described below are sufficient to ensure his appearance, and that bail should be granted:

1. Home detention at his home in Kissimmee, Florida.[1]
2. Electronic GPS monitoring.
3. Personal recognizance bond in the amount of $500,000.
4. Surrender of all travel documents, including his passport.
5. Execution of an extradition waiver.
6. Two financial co-signers and one moral suasion co-signer.

The security provided by the combination of these conditions, as well as the physical impact of his medical conditions, which are discussed further below, reasonably assure Mr. Hernandez's appearance. We respectfully request that this Court release him on bond pending trial under 18 U.S.C. § 3142(a)(2). Mr. Hernandez's request is opposed by the Government.

---

[1] While at the time of Mr. Hernandez's bail hearing, Mr. Hernandez resided in Georgia with his family, his long-term partner along with Mr. Hernandez's children have moved to Kissimmee, Florida.

Allen Overy Shearman Sterling US LLP is a limited liability partnership organized under the laws of the State of Delaware. Allen Overy Shearman Sterling US LLP is affiliated with Allen Overy Shearman Sterling LLP, a limited liability partnership registered in England and Wales with registered number OC306763 and with its registered office at One Bishops Square, London E1 6AD.  It is authorized and regulated by the Solicitors Regulation Authority of England and Wales (SRA number 401323).  The term partner is used to refer to a member of Allen Overy Shearman Sterling LLP or an employee or consultant with equivalent standing and qualifications.  A list of the members of Allen Overy Shearman Sterling LLP and of the non-members who are designated as partners is open to inspection at its registered office at One Bishops Square, London E1 6AD.
Allen Overy Shearman Sterling US LLP is an affiliate of Allen Overy Shearman Sterling LLP. Allen Overy Shearman Sterling LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Austin, Bangkok, Beijing, Belfast, Boston, Bratislava, Brussels, Budapest, Casablanca, Dallas, Dubai, Dublin, Düsseldorf, Frankfurt, Hamburg, Hanoi, Ho Chi Minh City, Hong Kong, Houston, Istanbul, Jakarta (associated office), Johannesburg, London, Los Angeles, Luxembourg, Madrid, Menlo Park, Milan, Munich, New York, Paris, Perth, Prague, Riyadh, Rome, San Francisco, São Paulo, Seoul, Shanghai, Silicon Valley, Singapore, Sydney, Tokyo, Toronto, Warsaw, Washington, D.C.

I.   MR. HERNANDEZ'S HISTORY, CHARACTER, AND BACKGROUND

Mr. Hernandez is a family man, who has established a life here in the United States after arriving on a Green Card in 2013.  Hr'g Tr. 10:18-23.  Mr. Hernandez lived with his long-term partner, Paola Hernandez, in Georgia where they shared a home with two of his children, ages 1 and 3 years old, all U.S. citizens, as well as two other children from Ms. Hernandez's prior marriage, ages 8 and 14.  *See id*.  Ms. Hernandez, a U.S. citizen, is willing to co-sign a bond in support of Mr. Hernandez's bail application.  Mr. Hernandez's ex-wife is also willing to co-sign a bond in support of Mr. Hernandez's application as a financial co-signer and is a U.S. citizen.  Hr'g Tr. 14:21–15:19.

Mr. Hernandez has financially supported his family.  Since 2013, Mr. Hernandez owned and eventually sold his own trucking business, Hr'g Tr. 12:8-9, and owned and operated a food truck.  Hr'g Tr. 12:18-21.  For additional income to support his family, Mr. Hernandez was a commercial driver of a box truck for five days a week.  Hr'g Tr. 12:23-24.  Mr. Hernandez also supports his sister, who lives on a family parcel of land in the Dominican Republic in which Mr. Hernandez also holds a partial ownership interest.  Hr'g Tr. 11:2-8.  While Mr. Hernandez is a citizen of the Dominican Republic, he only has visited two times in ten years.  *Id*.

Mr. Hernandez does not have any history of violence, and there are no allegations of violence or weapons in connection with the instant charges.  Hr'g Tr. 14:2-6.  Mr. Hernandez's past criminal history does not include any convictions and he is in criminal history category I.  Hr'g Tr. 14:4-7.

Mr. Hernandez's health has made his incarceration particularly challenging.



Prior to his arrest, While incarcerated at the Metropolitan Detention Center ("MDC"), Mr. Hernandez Yet, Mr. Hernandez has indicated that he does not have access to            as it is unavailable in the commissary and has not been able to receive                                    [2] *id*.

II.   PROCEEDINGS BELOW

Magistrate Judge Valerie Figueredo held a bail hearing on September 8, 2023.  ECF No. 5.  The Government sought detention based on dangerousness and risk of flight due to Mr. Hernandez's ties to the Dominican Republic, potential sentence, and his assets.  Hr'g Tr. 7:6-10, 7:22–8:20.  The Government argued that Mr. Hernandez posed a risk to the community based on the amount and quantity of drugs alleged in the case.  Hr'g Tr. 7:13-18.  In response, prior counsel for Mr. Hernandez argued that Mr. Hernandez had no history of violence, no criminal convictions, and that there is no violence alleged in the instant case.  Hr'g Tr. 13:24–14:8.  Defense counsel argued that Mr. Hernandez's proposed bail package, family with three minor children in the U.S., gainful employment, lawful residence, and safety valve eligibility demonstrated he was not a flight risk.  Hr'g Tr. 12:15-21, 13:2-6, 13:8-20, 18:14.

After hearing arguments, the Magistrate Judge granted the Government's request for detention.  ECF No. 5; Hr'g Tr. 21:6-7.  While the Magistrate Judge held that the Government did not show by clear and convincing evidence that there were no conditions that would reasonably assure the safety of the community, Hr'g Tr. 20:2-7, the Court

---

[2]   Among other issues, Mr. Hernandez has been unable to purchase his prescribed            due to a group wide punishment reducing the funds available to purchase items in the commissary.

held that Mr. Hernandez presented a risk of flight.  Hr'g Tr. 21:3-6.  The Court agreed with the Government because "Mr. Hernandez has property in the Dominican Republic… [and he] has a sister and potentially other family members there," Hr'g Tr. 20:12-15, and that while "he might [b]e safety valve eligible…he's still facing a significant prison sentence and then presumptive deportation."  Hr'g Tr. 20:15-19.  Thus, the Magistrate Judge concluded that "given his family ties, the property in the Dominican Republic, … [and his] assets that he could use to flee to the Dominican Republic," there were no conditions that could be imposed to reasonably assure his presence at future court appearances.  Hr'g Tr. 20:23–21:7.

### III.   ARGUMENT

#### A.   Legal standard

Bail decisions are controlled by the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 *et seq*.  This Court has three options under the Act: (1) order the release of the defendant "on personal recognizance or upon executing an unsecured appearance bond;" (2) order the release of the defendant, subject to one or more other conditions designed to "reasonably assure" (not guarantee) the defendant's presence in court and the safety of the community; (3) upon motion of the government in a case involving, *inter alia*, certain controlled substance offenses, including violations of 21 U.S.C. 821, 841(a)(1) and 841(b)(1)(A)(vii), as alleged here, order detention, but only if the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(a), (f).

Pre-trial detention is an extreme remedy such that, "it is only a limited group of offenders who should be denied bail pending trial," *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007).  "Because the law generally favors bail release, the government carries a dual burden in seeking pre-trial detention." *Id*.  Initially, the government must prove that the defendant poses a risk of flight or is a danger to the community (danger must be proved by clear and convincing evidence; then it must prove that no condition or combination of conditions will reasonably assure the defendant's presence in court or safety of the community.  18 U.S.C. § 3142(c)(1)(B).

As noted, in a case involving certain controlled substance offenses, including violations of 21 U.S.C. § 841(b)(1)(A), detention may be ordered if the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142.  A "rebuttable presumption" of detention arises if, as here, a defendant is charged with a narcotics offense carrying a maximum term of imprisonment of ten years or more under the Controlled Substances Act (21 U.S.C. §§ 801 *et seq*.).  18 U.S.C. § 3142(e)(3)(A).

Even when the rebuttable presumption applies, however, the burden still rests squarely with the government after the defendant overcomes their initial, "limited burden of production." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).  The presumption is merely one factor in assessing the propriety of pre-trial detention and does not relieve the government from its burden of proving that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e), (f).  In evaluating whether conditions of release are adequate, a court shall consider four factors: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  *See* 18 U.S.C. § 3142(g).

When reviewing a magistrate judge's pretrial detention order, the district court must determine the matter *de novo. See United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985).  In its review, the district court "may rely on the record of the proceedings before the magistrate judge," *United States v. Marcial*, No. 22 CR. 208, 2022 WL 5110601, at *2 (S.D.N.Y. Oct. 4, 2022) or "in its discretion, take additional evidence," *United States v. Colombo*, 777 F.2d 96, 98 (2d Cir. 1985).

### B. The Statutory Factors Weigh in Favor of Pre-Trial Release

Consideration of the 18 U.S.C. § 3142(g) factors demonstrates that Mr. Hernandez is not one of the "limited group of offenders" warranting pretrial detention given that there are conditions of release that will reasonably assure Mr. Hernandez's presence at future court proceedings. *Sabhani*, 493 F.3d at 75. While, the first two factors weigh towards detention,[3] the other pertinent statutory factors—history and characteristics of the defendant and the nature and seriousness of the danger to any person or the community—weigh decisively in Mr. Hernandez's favor.

Mr. Hernandez's history and characteristics—his decade-long presence in the United States, close family ties in the United States, business interests, and health concerns—all favor granting Mr. Hernandez bail. Mr. Hernandez has demonstrated strong ties to his community and family in the United States. Hr'g Tr. 10:18-23. Mr. Hernandez lives with his long-term partner and children, all of whom are U.S. citizens. *Id.* Mr. Hernandez is a devoted father, making his pre-trial detention a great hardship on his young children and their mothers. These relationships provide a compelling incentive for Mr. Hernandez to remain in the United States and comply with all court orders.

Mr. Hernandez also is highly motivated to appear for trial and stay in the United States because he has stable employment as a commercial trucker. Hr'g Tr. 12:18-21. His prior entrepreneurial endeavors and employment root him to his current residence, diminishing the likelihood of flight. Mr. Hernandez uses this income to support his family, who otherwise have limited to no income, Hr'g Tr. 12:23-24, 11:2-8, which would further serve to motivate him to appear for Court and abide by all conditions of bail.

Each of Mr. Hernandez's ███████████████████████████████████████████████████████████████████████████████████████ *See* Ex. A at 97. Additionally, Mr. Hernandez is suffering in MDC, which does not have the resources to treat his ███████████████████████████████████████████████████ *See* Ex. A at 95–182; *see also United States v. Chavez*, No. 22-CR-303, 2024 WL 50233 at *5–9 (S.D.N.Y Jan. 4, 2024) (finding "exceptional circumstances" to grant bail pending sentencing for a similar, non-violent, narcotics distribution case due to the defendant's serious medical conditions, MDC's "notoriously" slow and inadequate medical care of inmates—including failing to properly care for an inmate with a MRSA infection, and the physical conditions of the prison).

Lastly, the final statutory factor—the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release—decisively weighs in Mr. Hernandez's favor as the proceedings below reflect that Mr. Hernandez has no history of violence, and there are no allegations of violence or dangerous weapons related to the current matter. Hr'g Tr. 14:2-7; *see United States v. Mattis*, 963 F.3d 285 (2d Cir. 2020) (granting bail to a defendant who threw a Molotov cocktail into an unoccupied police car when the defendant's career and family ties indicated she would appear in court). In addition, the conditions of strict monitoring by Pre-Trial Services "shield[] defendant from the community, thereby removing the opportunity for him to participate in criminal activity while he awaits trial." *United States v. Lopez*, 827 F. Supp. 1107, 1110 (D.N.J. 1993).

### C. Bail Conditions Would Adequately Address the Government's Concerns and Reasonably Assure Mr. Hernandez's Appearance in Court.

The Government's rebuttal, which deemed Mr. Hernandez a flight risk based on his potential escape to the Dominican Republic and his finances, lacks merit in light of the new proposed bail conditions.

---

[3] The nature and circumstances of the offense charged is serious here, but this factor alone is not enough to warrant detention lest the Court engraft an impermissible "automatic detention" rule for persons charged with violations of 21 U.S.C. § 841(b)(1)(A), an undertaking Congress specifically declined to impose. And while the charge is serious, Mr. Hernandez's alleged role was one of transporter not organizer. Compl. ¶ 5(j)(ii), ECF No. 1. Further, the weight of the evidence "is considered the least important" of the § 3142(g) factors. *United States v. Parker*, 65 F. Supp. 3d 358, 365 (W.D.N.Y. 2014). That is both "because it is inherently difficult to assess the Government's case before trial" and because "a defendant must be presumed innocent." *Id.* (citing *United States v. Fama,* No. 13 Cr. 234, 2013 WL 2467985, at *3 (S.D.N.Y. June 7, 2013).

*First*, Courts have addressed concerns about a defendant's ties to a foreign state that enforces extradition waivers by requiring the defendant to surrender their passport and execute such a waiver as a condition of release—including in cases where the defendants were not U.S. citizens. *See, e.g.*, *United States v. Cirillo*, No. 99-1514, 1999 WL 1456536, at *2 (3d Cir. July 13, 1999) (vacating district court's detention order after requiring foreign citizen and resident to sign an "irrevocable waiver of extradition" as a condition of release); *United States v. Salvagno*, 314 F. Supp. 2d 115, 119 (N.D.N.Y. 2004) (ordering each of two defendants to "execute and file with the Clerk of the Court a waiver of extradition applicable to any nation or foreign territory in which he may be found as a condition of his continued release"); *United States v. Karni*, 298 F. Supp. 2d 129, 132–33 (D.D.C. 2004) (requiring an Israeli citizen who lived in South Africa and had "no ties to the United States" to sign a waiver of rights not to be extradited under Israeli and South African extradition treaties with the United States); *United States v. Chen*, 820 F. Supp. 1205, 1212 (N.D. Cal. 1992) (ordering as a condition of release that defendants "execute waivers of challenges to extradition from any nation where they may be found"). Moreover, a defendant's waiver of the right to appeal an extradition order "manifests an intention to remain here and face the charges against [them]." *United States v. Khashoggi*, 717 F. Supp. 1048, 1052 (S.D.N.Y. 1989).

The United States and the Dominican Republic have an extradition treaty in place. *See* Extradition Treaty, U.S.-Dom. Rep., June 19, 1909, 35 Stat. 2021. The Government has actively and successfully used this extradition treaty in recent cases. *See* Order, *United States v. Gonzalez-Amparo*, No. 2:21-cr-00198-BHL-5, ECF No. 126, 2 (E.D. Wisc. 2023) (extraditing defendant from the Dominican Republic); *United States v. Humeau-Heranndez*, No. 20-Cr-00207 (D.N.J. 2020) (extraditing a citizen of the Dominican Republic from the Dominican Republic); *see also* Press Release No. 22-192, *Dom. Rep. Citizen Extradited to U.S. on Money Laundering Charges,* Dep't of Just., May 20, 2022, https://www.justice.gov/usao-nj/pr/dominican-republic-citizen-extradited-united-states-money-laundering-charges); Min. Entry, *United States v. Bravo*, No. 18-cr-00283, ECF No. 6 (S.D.N.Y. 2018) (extraditing defendant from the Dominican Republic). The extradition treaty allows citizens of the Dominican Republic, such as Mr. Hernandez, to consent to a waiver of extradition under Article 15 of the Extradition Treaty. As a condition for bail, Mr. Hernandez will sign a waiver of extradition.

*Second*, the willingness of family and friends to co-sign a substantial bond all provide considerable assurance that Mr. Hernandez poses virtually no risk of flight. At the hearing, Mr. Hernandez was willing to put forward two financial co-signers and a third moral co-signer. Hr'g Tr. 13:2-12, 14:21–15:19. Mr. Hernandez is also willing to co-sign his assets and properties as well, including his partial interest in his family property in the Dominican Republic and his commercial truck. Given that he is the sole provider for his family, the consequences of Mr. Hernandez fleeing from these proceedings would be dire for his entire family, which he has worked for over a decade to build. Hr'g Tr. 13:2-6.

## IV.   CONCLUSION

Mr. Hernandez is determined to ensure that his sureties and his family do not suffer because of any breach of the terms of his potential bond. We have presented a substantial bail package that should satisfy the concerns of the Government and the 18 U.S.C. § 3142 factors. Given Mr. Hernandez's health concerns, this Court also has the obligation to ensure that a defendant's innate right to life and freedom from cruel and unusual punishment is protected. For the foregoing reasons, Mr. Hernandez respectfully requests that the Court order his release on bail pursuant to the conditions he has proposed.

Respectfully,

**Eugene Ingoglia**
Partner